1   GARY M. RESTAINO
    United States Attorney
2   District of Arizona
    M. BRIDGET MINDER
3   Arizona State Bar No. 023356
    CHRISTOPHER A. BROWN
4   LIZA M. GRANOFF
    Assistant U.S. Attorneys
5   United States Courthouse
    405 W. Congress Street, Suite 4800
6   Tucson, Arizona 85701
    Telephone: 520-620-7300
7   Email: Bridget.Minder@usdoj.gov
    Email: Christopher.Brown7@usdoj.gov
8   Email: Liza.Granoff@usdoj.gov

9   MATTHEW G. OLSEN
    Assistant Attorney General
10  U.S. Department of Justice
    National Security Division
11  JOHN CELLA
    Trial Attorney
12  Counterterrorism Section
    950 Pennsylvania Ave, NW
13  Washington, DC 20530
    Telephone:  202-305-1601
14  Email:  John.Cella@usdoj.gov
    Attorneys for Plaintiff

15                  IN THE UNITED STATES DISTRICT COURT

16                      FOR THE DISTRICT OF ARIZONA

17

18  United States of America,                CR-19-02162-002-TUC-JGZ

19                    Plaintiff,
                                              PLEA AGREEMENT
20       vs.

21  2. Abdi Yemani Hussein,

22
                      Defendant.
23

24       The United States of America and defendant Abdi Yemani Hussein agree to the

25  following disposition of this matter:

26                                   PLEA

27       1.    Defendant agrees to plead guilty to Count One of the Superseding

28  Indictment, which charges defendant with a Class C felony violation of 18 U.S.C. § 2339B,

FILED _____ LODGED
_____ RECEIVED _____ COPY

AUG - 1 2024

CLERK U S  DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1 Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist
2 Organization.   Defendant also agrees to the Forfeiture Allegation in the Superseding
3 Indictment.   The government will dismiss the remaining count of the Superseding
4 Indictment against defendant at the time of sentencing.

Elements of the Offense

6     2.    The elements of the offense are as follows:

7         a.    Defendant knowingly conspired and agreed with at least one other
8                person to provide material support or resources to a designated
9                foreign terrorist organization, and

10         b.    Defendant knew the organization described in the indictment (i) was
11                a designated terrorist organization, (ii) engaged or engages in
12                terrorist activity, or (iii) engaged or engages in terrorism.

13     The term "material support or resources" means any property, tangible or intangible,
14 or service, including personnel (one or more individuals who may be or include oneself).

Maximum Penalties

16     3.    Defendant understands the maximum penalties for the offense to which he is
17 pleading are a term of 20 years' imprisonment, a fine of $250,000, or both, and a lifetime
18 term of supervised release.

19     4.    Defendant agrees to pay a fine unless he establishes the applicability of the
20 exceptions contained in § 5E1.2(e) of the Sentencing Guidelines.

21     5.    Pursuant to 18 U.S.C. § 3013, defendant shall pay a special assessment of
22 $100.  The special assessment is due and payable at the time defendant enters the plea of
23 guilty, but in no event shall be paid later than the time of sentencing unless defendant is
24 indigent.  If defendant is indigent, the special assessment will be collected according to the
25 provisions of Chapters 227 and 229 of Title 18, United States Code.

Immigration Consequences

27     6.    Defendant recognizes that pleading guilty, as set forth in more detail below,
28 may have consequences with respect to his immigration status if defendant is a recently

- 2 -

1  naturalized United States citizen or is not a citizen of the United States.  Under federal law,
2  a broad range of crimes are removable offenses, including the offense to which defendant
3  is pleading guilty.  Although there may be exceptions, defendant understands that his guilty
4  plea and conviction for this offense make it practically inevitable and a virtual certainty
5  that he will be removed or deported from the United States.  Defendant agrees that he has
6  discussed this eventuality with his attorney.  Defendant nevertheless affirms that he wants
7  to plead guilty regardless of any immigration consequences that this plea entails, even if
8  the consequence is defendant's automatic removal from the United States.

9                          STIPULATIONS, TERMS AND AGREEMENTS
10                          Agreements Regarding Sentencing
11       7.    Stipulations: Sentencing:  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the
12  parties agree that:

13             a.    Any prison sentence shall not exceed 132 months.
14             b.    The enhancements in U.S.S.G. § 2M5.3(b) and § 3A1.4(a)-(b) apply
15                   in this case.
16             c.    Defendant will not seek any adjustments in Chapters Two, Three or
17                   Four of the Sentencing Guidelines or any "departures" from the
18                   Sentencing Guidelines.
19             d.    Nothing in this agreement precludes the defendant from asking for a
20                   variance from the final advisory Sentencing Guidelines Range.

21       8.    Stipulation: Agreement Contingent on Plea by Co-Defendant:  Pursuant to
22  Fed. R. Crim. P. 11(c)(1)(C), the parties agree that this plea agreement is contingent on a
23  guilty plea being entered by co-defendant, Ahmed Mahad Mohamed, and Mohamed's
24  guilty plea being accepted by the Court. Defendant understands that if Mohamed does not
25  accept his plea agreement for any reason or does not enter a guilty plea, the United States
26  may, but is not required to, withdraw from this plea agreement with defendant, in which
27  case the parties would not be bound by the terms of this plea agreement, including the
28  stipulations, recommendations, or other agreements herein, or any of the facts contained in

- 3 -

1   the factual basis. If Mohamed withdraws his guilty plea, or if the Court rejects Mohamed's

2   guilty plea, the United States may, but is not required to, withdraw from this plea agreement

3   with defendant. Only the United States, not defendant, may elect to withdraw from this

4   plea agreement.

5        9.    Recommendation: Acceptance of Responsibility.  Pursuant to Fed. R. Crim.

6   P. 11(c)(1)(B), if defendant makes full and complete disclosure to the U.S. Probation Office

7   of the circumstances surrounding defendant's commission of the offense, and if defendant

8   demonstrates an acceptance of responsibility for this offense up to and including the time

9   of sentencing, the United States will recommend a two-level reduction in the applicable

10  Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).  If defendant has an

11  offense level of 16 or more, the United States will move the Court for an additional one-

12  level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.

13  § 3E1.1(b).

14       10.    Defendant understands that if he violates any of the conditions of his

15  supervised release, the supervised release may be revoked.   Upon such revocation,

16  notwithstanding any other provision of this agreement, defendant may be required to serve

17  a term of imprisonment or defendant's sentence may otherwise be altered.

18       11.    Defendant and the government agree that this agreement does not in any

19  manner restrict the actions of the government in any other district or bind any other United

20  States Attorney's Office.

21       12.    Defendant understands and agrees to cooperate fully with the United States

22  Probation Office in providing (a) all criminal history information, i.e., all criminal

23  convictions as defined under the Sentencing Guidelines; (b) all financial information, i.e.,

24  present financial assets or liabilities that relate to the ability of defendant to pay a fine or

25  restitution; (c) all history of drug abuse which would warrant a treatment condition as part

26  of sentencing; and (d) all history of mental illness or conditions which would warrant a

27  treatment condition as part of sentencing.

28

- 4 -

13.     If the Court, after reviewing this plea agreement, concludes any provision is inappropriate, it may reject the plea agreement pursuant to Fed. R. Crim. P. 11(c)(5), giving defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw his guilty plea.

Forfeiture

14.     Nothing in this agreement shall be construed to protect defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

15.     Defendant agrees to forfeit, and hereby forfeits, all interest in any asset that defendant owns or over which defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s), including the following property: **U.S. currency (cash) in the amount of $10,002**.

16.     Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, or federal. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable

- 5 -

forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

17.     Forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon defendant in addition to forfeiture.  This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

18.     Defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy, or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment.  Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.  Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

19.     Defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated.  Defendant further agrees that he/she will not contest civil, administrative, or judicial forfeiture of the listed property. Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

20.     The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

- 6 -

21.     Defendant hereby waives and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above.  Without limitation, defendant understands and agrees that by virtue of this plea of guilty, defendant will waive any rights or cause of action that defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

Stipulation to Judicial Removal Order

22.     Defendant agrees to the entry of a stipulated judicial order of removal pursuant to 8 U.S.C. §§ 1228(c)(5) and 1227.  Specifically, defendant admits he is a native and citizen of Somalia and is removable from the United States pursuant to 8 U.S.C. § 1227(a)(4)(B) (engaged in terrorist activity).

<em>Voluntary Waiver of Rights</em>

23.     After consultation with counsel and understanding the legal consequences of doing so, defendant knowingly and voluntarily waives the right to the notice and hearing provided for in 8 U.S.C. § 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order.  Defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act ("INA"), on the question of defendant's removability from the United States.  Defendant further understands the rights defendant would possess in a contested administrative proceeding and waives these rights, including defendant's right to examine the evidence against him, to present evidence on his behalf, and to cross-examine the witnesses presented by the government.

24.     Defendant agrees to waive his rights to any and all forms of relief or protection from removal, deportation, or exclusion under the INA, as amended, and related federal regulations.  These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: asylum; withholding of removal under 8 U.S.C. § 1231(b)(3); any protection from removal pursuant to Article 3 of the

- 7 -

1   United Nations Convention Against Torture, including withholding or deferral of removal
2   under 8 C.F.R. § 208; cancellation of removal; adjustment of status; registry; de novo
3   review  of a denial or revocation of temporary protected status (current or future); waivers
4   under 8 U.S.C. §§ 1182(h) or 1182(i); visa petitions; consular processing; voluntary
5   departure or any other possible relief or protection from removal available under the
6   Constitution, laws or treaty obligations of the United States.  As part of this agreement,
7   defendant specifically acknowledges and states that defendant has not been persecuted, and
8   has no present fear of persecution, in Somalia on account of his race, religion, nationality,
9   membership in a particular social group, or political opinion.  Similarly, defendant further
10  acknowledges and states that defendant has not been tortured, and has no present fear of
11  torture, in Somalia.

12      25.    Defendant hereby requests that an order be issued by this Court for his
13  removal to Somalia.  Defendant agrees to accept a written order of removal as a final
14  disposition of his immigration proceedings and waives any and all rights to challenge any
15  provision of this agreement in any United States or foreign court or tribunal.

16      26.    Defendant hereby agrees to make the judicial order of removal a public
17  document, waiving his privacy rights, including his privacy rights under 8 C.F.R. § 208.6.
18  At the request of the U.S. Attorney's Office, U.S. Immigration and Customs Enforcement
19  ("ICE") concurs with the government's request for a judicial order of removal.  As a result
20  of the above-referenced order, upon the completion of defendant's criminal proceedings,
21  including any sentence of incarceration, defendant shall be removed to Somalia.

22      27.    It is the intention of the parties that at the conclusion of his sentence of
23  incarceration in this case, defendant will be removed from the United States.  Defendant
24  understands and agrees that at the end of his sentence of incarceration in this case, he will
25  be transferred to ICE custody pending his removal from the United States.  Defendant
26  agrees that he will not seek to be released from ICE custody prior to his removal from the
27  United States.

28

*Assistance in the Execution of Removal*

28.     Defendant agrees to assist ICE in the execution of his removal.  Specifically, defendant agrees to assist ICE in the procurement of any travel or other documents necessary for defendant's removal; to meet with and to cooperate with representatives of the country or countries to which defendant's removal is directed; and, to execute those forms, applications, or waivers needed to execute or expedite defendant's removal. Defendant further understands that his failure or refusal to assist ICE in the execution of his removal shall breach this plea agreement and may subject defendant to criminal penalties under 8 U.S.C. § 1253.

*Re-entry and Penalties*

29.     Defendant concedes that the entry of this judicial order of removal renders him permanently inadmissible to the United States.  He agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representative of the U.S. government.

The Court's failure, for any reason, to enter the judicial order of removal, shall make this plea agreement, and the promises contained herein, null and void.

Waiver of Defenses and Appeal Rights

30.     Provided defendant receives a sentence in accordance with this plea agreement, defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against defendant, or any aspect of defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations. The sentence is in accordance with this agreement if the sentence imposed does not exceed 132 months imprisonment.  Defendant further waives: (1) any right to appeal the Court's

1    entry of judgment against defendant; (2) any right to appeal the imposition of sentence

2    upon defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the

3    district court's refusal to grant a requested variance; (4) any right to collaterally attack

4    defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack;

5    and (5) any right to file a motion for modification of sentence, including under 18 U.S.C.

6    § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C.

7    § 3582(c)(1)(A) and to appeal the denial of such a motion).  Defendant acknowledges that

8    this waiver shall result in the dismissal of any appeal or collateral attack defendant might

9    file challenging his conviction or sentence in this case.  If defendant files a notice of appeal

10   or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall,

11   upon motion of the government, be remanded to the district court to determine whether

12   defendant is in breach of this agreement and, if so, to permit the government to withdraw

13   from the plea agreement.  This waiver shall not be construed to bar an otherwise-preserved

14   claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is

15   defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

### Reinstitution of Prosecution

17   31.    Nothing in this agreement shall be construed to protect defendant in any way

18   from prosecution for perjury, false declaration or false statement, or any other offense

19   committed by defendant after the date of this agreement.  In addition, if defendant commits

20   any criminal offense between the date of this agreement and the date of sentencing, the

21   government will have the right to withdraw from this agreement.   Any information,

22   statements, documents, and evidence which defendant provides to the United States

23   pursuant to this agreement may be used against defendant in all such proceedings.

24   32.    If defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any

25   court in a later proceeding, the government will be free to prosecute defendant for all

26   charges as to which it has knowledge, and any charges that were dismissed because of this

27   plea agreement will be automatically reinstated.  In such event, defendant waives any

28   objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment

to the Constitution as to the delay occasioned by the later proceedings.  Defendant agrees that the stipulated sentencing ranges set forth under "Agreements Regarding Sentence" will not be offered if prosecution is re-instituted.

## WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

### Waiver of Rights

I have read each of the provisions of the entire plea agreement with the assistance of counsel and I understand its provisions.  I have discussed the case and my constitutional and other rights with my attorney.  I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; and to appeal.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea.  I have been advised by my attorneys of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement.  I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.  I agree that any Sentencing Guidelines range referred to herein or discussed with my attorneys is not binding on the Court and is merely an estimate.

I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorneys) that are not contained within this written plea agreement are without force and effect and are null and void.

1    I am satisfied that my defense attorneys have represented me in a competent manner.

2    I am not now on or under the influence of any drug, medication, liquor, or other

3    intoxicant or depressant, which would impair my ability to fully understand the terms and

4    conditions of this plea agreement.

5                              Factual Basis and Relevant Conduct

6    I further agree that the following facts accurately describe my conduct in connection

7    with the offense to which I am pleading guilty and that if this matter were to proceed to

8    trial the government could prove the elements of the offense beyond a reasonable doubt:

9    
10    
11    
12    
13    
14   > Starting in late 2018 or early 2019, and continuing until July 26, 2019, while
   > I was living in Tucson, Arizona, I conspired and agreed with Ahmed Mahad
   > Mohamed ("Mohamed") to provide material support (specifically, ourselves)
   > to the Islamic State of Iraq and al-Sham ("ISIS"), which was at the time, and
   > still is, a designated Foreign Terrorist Organization ("FTO") pursuant to
   > Section 219 of the INA, knowing that ISIS was a designated foreign terrorist
   > organization, and knowing that ISIS had engaged in, and was engaging in,
   > terrorist activity and terrorism.[1]

15   
16   
17   > On March 12, 2019, in Tucson, Mohamed and I met with a person we
   > believed to be a fellow ISIS supporter who, like us, wanted to make hijra
   > (travel) to the Middle East to join ISIS. We did not know the person we met
   > with was an undercover employee ("UCE") of the FBI.

18   
19   
20   
21   > At our meeting on March 12, 2019, I said to Mohamed and the UCE, among
   > other things, "We make it (referring to hijra), or we go to jail." We also
   > talked about what we might do if we could not travel outside the United
   > States. At one point, I suggested attacking the White House, saying to

22   
23   
24   
25   
26   
27   
28   _____

   [1] On or about October 15, 2004, the U.S. Secretary of State designated al Qaeda in
   Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as an FTO under Section 219
   of the INA and as a Specially Designated Global Terrorist under section 1(b) of Executive
   Order 13224. On or about May 15, 2014, the Secretary of State amended the designation
   of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global
   Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State
   of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the
   following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (i.e., "ISIS"),
   the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh,
   Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21,
   2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and
   ISIS. To date, ISIS remains a designated FTO.

Mohamed and the UCE: "Like wanna do something? just go to the White House."

On June 24, 2019, Mohamed and I met with the UCE in Tucson again. During the conversation, I said I was "serious" about making hijra and "I just wanna leave, you know, as soon as possible." I also told them:

- "I swear to God ... If I see kafer (*kafir, singular for kuffar*), I'm not going to talk to him. I'm going to cut his head—right away!"
- "Insha-Allah, know what I want to be? I want to be, you know, where, um, where you kill people only. That's where I want to be.... Kill, kill."
- "When I go [to] Sinai ... going to be killer.... Can we just make war, right now, quick?"
- "I swear to God, I want to be a commander. I want to be on the front line. I want to be on the front line. I want to be the commander. I want to be on the front line."
- "I will kill so many people ... even if, like, if my sword, even, until my sword moves, I will—kill everybody...until my ... my sword moves ... I swear to God, I will kill everybody."

We also talked again about what we might do if we couldn't leave the United States. I said:

- "I will blow [up] the White House if they stop me"
- "It will be like it will be ashes.... They will count ashes, how many people, they will never know how many people will die there."
- "I will make sure ... make sure they kill me like when I die die that's how they can stop me until then, I will – I will keep going. I will keep going."
- "9-11 it wasn't that big deal. This will be something the world has never ever seen before. Something nobody ever seen before. The whole world will be shocked, everybody will be shocked, they be like, what the hell just happened?"
- "And Dawlah, they will get a victory, they will be like – Alhamduhlillah (*praise be to God*) that was very good. They will be so happy like you know.... Dawlah, they will be like, Alhamdulillah, they will be like that's another victory you know?" By "Dawlah," I was referring to ISIS.

After our meeting on June 24, 2019, Mohamed and I began preparing to travel to Egypt so we could join ISIS. To raise money for our trip, I sold my car for $4,000. Mohamed sold his car, too. On July 25, 2019, Mohamed and I bought roundtrip plane tickets from Tucson, Arizona, to Cairo, Egypt. We

planned to depart the next day, July 26, 2019; the return date for our tickets was November 30, 2019, but we did not intend to return.

On the morning of July 26, 2019, Mohamed and I rode with the UCE to the airport. Mohamed and I had $10,002 in cash, which Mohamed was carrying. We planned to use the money for food, hotel, and other travel expenses, and to buy guns if needed. During the car ride to the airport, I asked: "So like where are we gonna buy the guns? You know? I wanna, like buy, like a lot ...." Mohamed said: "so if the brothers can buy for us guns, all that, we will get out there as soon as possible."

When we got to the Tucson airport on July 26, 2019, Mohamed and I checked in for our flight at the ticket counter, went through the passenger security screening, and walked to the departure gate for our flight. I intended to board the flight and travel from Tucson to Cairo, Egypt. In Egypt, I planned to work with Mohamed and other ISIS supporters to smuggle ourselves into the ISIS-controlled area of the Sinai Peninsula and work under the direction and control of ISIS. While working for ISIS, I intended to spread and advance ISIS's ideology and thereby influence or affect the conduct of the United States government and foreign governments by intimidation and coercion, as well as to retaliate against those governments for their opposition to ISIS.

8-1-24
Date

ABDI YEMANI HUSSEIN
Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including defendant's waiver the right to appeal. No assurances, promises, or representations have been given to me or to defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure

1  that the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R.

2  Crim. P.

3

4  _____8-1-24_____                          _____
      Date                                      DAN H. COOPER
5                                                AMY KRAUSS
                                                 Attorneys for Defendant
6

7

8                          GOVERNMENT'S APPROVAL

9          I have reviewed this matter and the plea agreement. I agree on behalf of the United

10  States that the terms and conditions set forth are appropriate and are in the best interests of

11  justice.

                                                 GARY M. RESTAINO
12                                               United States Attorney
                                                 District of Arizona
13

14  _____08/01/2024_____                     _____
      Date                                      M. BRIDGET MINDER
15                                               CHRISTOPHER A. BROWN
                                                 LIZA M. GRANOFF
16                                               Assistant U.S. Attorneys

17

18

19

20

21

22

23

24

25

26

27

28